IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **IMPACT FIRE SERVICES, LLC** § | |
| § | |
| *Plaintiff,* § | |
| § | **CIVIL NO. 6:19-CV-00176-ADA** |
| VS. § | |
| § | |
| **SEAN L. OSBORNE** § | |
| § | |
| *Defendants.* § | |

### DEFENDANT SEAN L. OSBORNE'S COMBINED
### MOTION FOR TRADITIONAL AND NO EVIDENCE SUMMARY JUDGMENT

### THE PURPORTED NON-COMPETE AGREEMENT IS OVERLY BROAD

**NOW COMES** Defendant Sean Osborne and makes and files this motion for traditional and no evidence summary judgment (subject to his already pending motion arguing that that the non-compete agreement is unenforceable due to lack of consideration) seeking a judgment that the agreement that Plaintiff seeks to enforce in this case is overly broad and thus unenforceable as written. In support thereof, Osborne would show as follows:

**I.   SUMMARY OF THE MOTION**

Defendant Sean Osborne has worked in the fire protection industry in the Waco, Texas area for almost 12 years. Work in the fire protection industry has been Mr. Osborne's livelihood his entire adult life. Long before Mr. Osborne worked for Plaintiff (and for years before Plaintiff even had an office in Waco), Mr. Osborne was providing fire protection services in Waco. Mr. Osborne provided those services to and developed relationships with various significant customers in the Waco area, including Coca Cola, Baylor University, and the City of Waco.

Apparently recognizing Mr. Osborne's skills and relationships with clients, when Plaintiff acquired Mr. Osborne's prior employer, they offered to hire him. In doing so, Plaintiff had Mr. Osborne sign an employment agreement. Plaintiff also had Mr. Osborne sign an Agreement to Maintain Confidentiality of Information, Not to Solicit, and Not to Compete (Non-Compete Agreement). Under the Non-Compete Agreement, generally, Mr. Osborne is to refrain from engaging in any business that competes in any way with Plaintiff in the fire protection industry in Waco and within 50 miles of the City limits of Waco. Further, the Non-Compete Agreement prohibits Mr. Osborne from working in his chosen profession within 50 miles of the city limits of Houston, Austin, Tyler, San Antonio, and College Station. This is despite the fact that Mr. Osborne never performed any work for Plaintiff in Houston, Tyler, San Antonio, and College Station and performed only very limited work in Austin. The Non-Compete Agreement also prohibits Mr. Osborne from working in "other cities throughout Texas." The Non-Compete Agreement does not provide any definition or even guidance as to what other cities are covered.

The prohibition imposed on Mr. Osborne by the Non-Compete Agreement applies regardless of whether Mr. Osborne had a relationship with the client prior to working for Plaintiff, regardless of whether Mr. Osborne performed any work for or had any contact with the client while working for Plaintiff, and regardless of whether Mr. Osborne used or had access to the client's confidential information while working for Plaintiff.

Additionally, Mr. Osborne is to refrain from soliciting Plaintiff's clients or employees. With regard to clients, the Non-Compete Agreement's non-solicitation provision purports to prohibit Mr. Osborne from soliciting any of Plaintiff's clients, suppliers or "business relations." The Non-Compete Agreement's non-solicitation provision is not limited to those clients Mr. Osborne actually performed work for while working for Plaintiff and does not make any

distinction between clients with which Mr. Osborne had a relationship before working for Plaintiff. The non-solicitation does not define "business relations" either.

As allowed by his at-will employment status, in August 2018, Mr. Osborne ended his employment with Plaintiff. Plaintiff then filed this lawsuit, claiming Mr. Osborne has breached his contract with Plaintiff by competing against Plaintiff and by soliciting Plaintiff's clients and employees.

Mr. Osborne has not, in any way, violated the Non-Compete Agreement. Regardless, that agreement is overly broad and thus, not enforceable in the first place. At a minimum, the non-compete agreement is overly broad and must be reformed. Under *Texas Business & Commerce Code* § 15.50, a non-competition agreement (which for purposes of the section includes non-solicitation clauses) is enforceable only "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Plaintiff is attempting to enforce an agreement that purports to impose an industry-wide prohibition on Mr. Osborne—an agreement that by its terms would forbid him from competing, directly or indirectly, in any way with Plaintiff, regardless of whether the allegedly competing activity relates to any services Osborne provided on behalf of Plaintiff. Plaintiff is attempting to prohibit Mr. Osborne from working for clients with which he had a business relationship before being employed by Plaintiff, from working in three cities in which Mr. Osborne never worked for Plaintiff (and where there were not even plans for Osborne to work), from working in "other cities throughout Texas" without any definition or direction as to what cities are covered, and from dealing with "business relations" with no definition of who or what

that is. Such broad and vague limits are not enforceable, let alone reasonable, leaving the Non-Compete Agreement unenforceable as written.

Thus, the Court should grant Osborne a traditional summary judgment on Plaintiff's breach of contract claim, as well as on Osborne's claim for declaratory relief. Moreover, while this case was pending in state court, in an effort to have the issues related to the enforceability of the Non-Compete Agreement addressed expeditiously, the parties proposed a temporary injunction and an expedited discovery schedule to the state court. That temporary injunction was never signed and a bond was never posted. Further, the non-solicitation and non-competition provisions of the Non-Compete Agreement by their terms run for "one (1) year after termination" of Mr. Osborne's employment. Mr. Osborne ended his employment on August 20, 2018. Mr. Osborne seeks a ruling that the temporary injunction is of no effect and that the non-solicit and non-compete obligations of the Non-Compete Agreement expire as of August 20, 2019.

## II.     AUTHORITIES AND ANALYSIS

**A.     TRADITIONAL MOTION FOR SUMMARY JUDGMENT**

### *1.     Traditional Summary Judgment Standard*

Summary judgment is proper pursuant to Rule 56 of the *Federal Rules of Civil Procedure* "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant. *Celotex*, 477 U.S. at 324. For a traditional motion for summary judgment, the movant meets its burden by establishing facts that either negate an element essential to the non-movants case or that establish the movant's claim or defense. *Celotex Corp.*, 477 U.S. at 322-23. When the nonmoving party bears the burden of proof at trial, the moving party can carry its summary judgment burden by either "affirmatively offering evidence which undermines one or more of the essential elements of the [nonmoving party's] . . . case[] or[] . . . demonstrating that the evidence in the [summary judgment] record falls short of establishing an essential element of the [nonmoving party's] . . . case." *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991). To counter such a motion, the nonmoving party must point to evidence sufficient for a reasonable jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 249-50; *Celotex Corp.*, 477 U.S. at 322-23.

Whether a restrictive covenant is reasonable and susceptible of enforcement without reformation is a question of law for the court. *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex. 1983). "Covenants not to compete are restraints of trade, and unenforceable as a matter of public policy unless they are reasonable restrains." *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.) (citing *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.–Houston [14th Dist.]1996, writ denied) and *Tex. Bus. & Com. Code* § 15.50(a)).

### 2. *Evidence in Support of Traditional Summary Judgment*

Mr. Osborne submits the following evidence in support of his motion for summary judgment:

Exhibit 1 and 1A:   Affidavit of Sean Osborne, with Supplemental Affidavit

Exhibit 2:   Executed Offer of Employment

Exhibit 3:   Agreement to Maintain Confidentiality of Information, Not to Solicit, and Not to Compete

Exhibit 4:   Responses to Requests for Admission

Exhibit 5:   Responses to Interrogatories

Exhibit 6:   Responses to Requests for Production

### 3. *Authorities and Analysis*

#### a. **The Non-Competition and Non-Solicitation Clauses of the Non-Compete Agreement are So Vague and Indefinite That it is Not Enforceable**

As a basic proposition of contract law, for a contract to be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Contract terms are reasonably certain if "they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Playoff Corp. v. Blackwell,* 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied). Conversely, "[i]f an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *Id.*

The Non-Compete Agreement states that Osborne cannot compete with Plaintiff in "cities throughout Texas."[1] The agreement does not set forth any way to determine what cities are covered. Is it the cities in which Plaintiff was doing business at the time the agreement was signed? Is it any city in which Plaintiff is doing business at the time Osborne's employment with Plaintiff ends, or at the time of the alleged competition by Osborne? Is it something else? There is simply no way to tell from the Non-Compete Agreement what cities are covered.

Similarly, the Non-Compete Agreement purports to prohibit Osborne from soliciting Plaintiff's "business relations."[2] Again, the agreement does not provide a definition of "business relations" or any way to determine what the phrase is meant to cover. Are business relations customers, prospective customers, suppliers, some subset of these, all of these, or something else? Without any language in the agreement to determine the meaning of these phrases, Mr. Osborne's obligations under the agreement cannot be determined with reasonable certainty. Thus, the Non-Compete Agreement is not enforceable. *Playoff Corp. v. Blackwell,* 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied) (when "essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, *there is no contract"*) (emphasis added); *see also Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.,* 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied) (where structure and character of payment for a party's services under a contract was not sufficiently described, contract was indefinite and unenforceable).

---

[1] Non-Compete Agreement, Exhibit 3, p.1.

[2] Id.

### b. The Non-Compete Amounts to an Unlawful Industry-Wide Prohibition

The Texas Supreme Court, and appellate courts applying its precedent, have made it clear that a non-compete agreement that attempts to impose an industry-wide prohibition on competition on an employee is, as a matter of law, unreasonable and thus unenforceable under § 15.50. *Wright*, 137 S.W.3d at 298; *John R. Ray & Sons*, 923 S.W.2d at 85 (citing *Haas*, 818 S.W.2d at 386-88). "A covenant not to compete that contains an industry-wide exclusion from subsequent employment is unenforceable." *Wright*, 137 S.W.3d at 298 (citing *Stroman*, 923 S.W.2d at 85 (citing *Haass*, 818 S.W.2d at 386-88)).

Per the non-competition provision of the Non-Compete Agreement, Mr. Osborne may not, during his employment or for a period of one year after its ending:

> Engage in *any* business or enterprise (whether as owner, partner, officer, director, employee, consultant, independent contractor, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a company) that *directly or indirectly* competes with the Company's business or the business of any of its subsidiaries within a Fifty (50) mile radius of the city limits of Employer's Geographic Area, including but not limited to *any business or enterprise that develops, manufacturers, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed or sold, or planned to be developed, manufactured, marketed or sold, by the Company or any of its subsidiaries while the Employee was employed by the Company or any of its subsidiaries*[3]

This provision purports to limit Osborne from working for any company that develops, manufactures or markets fire protection services or equipment. This is despite the fact that Plaintiff does not develop, to Osborne's knowledge, manufacture or market fire protection services or equipment and Osborne did not perform any such work on its behalf.[4] The provision goes so far as to prohibit Osborne from working for any company that even "indirectly"

---

[3] Non-Compete Agreement, Exhibit 3, p.2, ¶2 (emphasis added).

[4] Affidavit of Sean Osborne, Exhibit 1.

competes with Plaintiff. Thus, the Non-Compete Agreement purports to prohibit Osborne from working for a company that develops fire protection services, that markets fire protection equipment, or manufactures fire protection products, even though Plaintiff does none of these, and the agreement purports to prohibit Osborne from engaging in any work that even "indirectly" competes with Plaintiff or even its subsidiaries (whatever they are). This prohibition functions as an industry-wide prohibition, broader than any legitimate business interest of Plaintiff can justify. *DeSantis*, 793 S.W.2d at 681-82 (reasonableness of non-compete is a question of law and noting that restraints are unreasonable if they are broader than necessary to protect the legitimate interests of the employer). Consequently, the Non-Compete Agreement is overly broad and unenforceable as a matter of law. *See Diversified Human Resources Group, Inc. v. Levinson-Polakoff*, 752 S.W.2d 8, 11-12 (Tex. App.—Dallas 1988, no writ) (restricting employee, who had worked as placement agent for data processors, from working as placement agent for insurance underwriters, was unreasonable).

### c. The Non-Compete Agreement Has No Reasonable Geographic Limitation

The Texas Supreme Court has specifically stated that a restrictive covenant "must not restrain [a former employee's] activities into a territory into which his former work has not taken him." *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991). Mr. Osborne never performed any services for Plaintiff in Houston, Tyler, San Antonio, or College Station, or within 50 miles of the limits of any of these cities.[5] Plaintiff admits that Osborne never performed work for it in Houston or within 50 miles of Plaintiff's office there.[6]

---

[5] Id.

[6] Responses to Requests for Admission (Served with Defendant's Answer), Exhibit 4, RFA 4.

To assess the basis of Plaintiff's claim and basis for enforcing the Non-Compete Agreement, Osborne served the following interrogatory on Plaintiff:

> **INTERROGATORY NO. 4:** Describe any services or attempts to provide services by Defendant as an employee of Impact in, or within 50 miles of, the city limits of the following: Houston, Austin, Waco, Tyler, San Antonio, College Station, and any other city Impact contends falls within the "Employer's Geographic Area" as described in the Agreement to Maintain Confidentiality of Information, Not to Solicit, and Not to Compete. In responding to this request, identify the client or prospective client and generally describe the services provided or that Defendant sought to provide on behalf of Impact.
>
> Plaintiff responded--
>
> **ANSWER:** Plaintiff objects to the interrogatory on the grounds that it seeks information equally available to Defendant. Plaintiff further objects to the interrogatory on the grounds it is overly broad and unduly burdensome as it requires Plaintiff to set forth the details of each and every work order or invoice Defendant was connected to during his term of employment with Plaintiff. Subject to and without waiving the foregoing, Defendant was dispatched to clients as needed. Upon being assigned or dispatched to a client, Defendant provided the services requested by the client at that particular time.[7]

Knowing that the point of this interrogatory was to assess whether there is any basis to restrict Osborne from working in and around cities other than Waco, Plaintiff does not identify or describe a single project on which Osborne worked in or within 50 miles of any of the other listed cities, any client Osborne serviced in or within 50 miles of the other listed cities, and does not otherwise provide any information to show that Osborne actually worked for Plaintiff in or within 50 miles of any of the other listed cities.[8] By a similar interrogatory, Osborne asked that Plaintiff describe any plans for Osborne to provide services in or within 50 miles of the cities other than Waco.[9] Plaintiff could not do so. When asked to produce documents to show services

---

[7] Responses to Interrogatories, Exhibit 5, ROG 4.

[8] Responses to Interrogatories, Exhibit 5, ROG 4.

[9] Responses to Interrogatories, Exhibit 5, ROG 3.

provided by Osborne on behalf of Plaintiff, or plans to have Osborne provide services, in or around Houston, Tyler, San Antonio, or College Station, Plaintiff failed to produce any documents.[10]  Plaintiff produced evidence of only limited work by Osborne in or near Austin.[11]

Thus, Osborne has not performed any work activities for Plaintiff in or within the cities of Houston, Tyler, San Antonio, or College Station as listed in the Non-Compete Agreement and, there were no plans to have him do so. Consequently, the Non-Compete Agreement covering them is overly broad. *Haass,* 818 S.W.2d at 387 (determining, as a matter of law, that non-compete that applied to territories where employee had not worked, was unenforceable).

### d. Restraining Mr. Osborne Working for Customers That He Did Not Perform Services For While Working for Plaintiff is Overly Broad

Texas courts, including the Supreme Court, have consistently held that a restrictive covenant is "overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment." *Stroman*, 923 S.W.2d at 85; *see also Haass*, 818 S.W.2d at 386-88; *Gallagher Healthcare Ins. Servs.*, 312 S.W.3d at 654; *Wright*, 137 S.W.3d at 298 (A "covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable."). A covenant that includes a restriction on competition that does "not limit the prohibitions just to customers with whom [the former employee] had dealings while he was employed" is "over broad" and an "unreasonable restraint[] of trade." *Wright*, 137 S.W.3d at 298.

---

[10] Responses to Requests for Production, Exhibit 6, Requests 7-11.

[11] *Id.*

The non-compete clause of the Non-Compete Agreement states that Mr. Osborne may not "[e]ngage in any business or enterprise" that "directly or indirectly" [12] competes with Plaintiff. The prohibition on competition is in no way limited to clients with which Osborne actually worked or to which Osborne provided services while working for Plaintiff. Even customers that Plaintiff has never provided services to are covered by the language of the Non-Compete Agreement, making it overly broad and unenforceable. *Stroman*, 923 S.W.2d at 85.

### e. Restraining Mr. Osborne From Soliciting or Working for Customers With Which He Had a Preexisting Relationship is Overly Broad

The most basic guidance from the Supreme Court regarding the review of a non-compete agreement is that a restraint on competition is unnecessary if it is broader than necessary to protect the legitimate interests of the employer. *DeSantis*, 793 S.W.2d at 682. "A covenant is unreasonable if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Zep. Mfg. Co. v. Harthcok*, 824 S.W.2d 654, 660 (Tex. App.—Dallas 1992, no writ).

Not only is the Non-Compete Agreement overly broad as set out above, neither the non-competition provision nor the non-solicitation provision[13] takes into account Mr. Osborne's prior work in the fire protection industry or his relationships with clients prior to working with Plaintiff. Mr. Osborne had relationships with clients and all the related information for those clients—points of contact, product and service history, pricing, and similar information—before

---

[12] Non-Compete Agreement, Exhibit 3, p.2, ¶2.

[13] Non-solicitation clause in a personal services occupation is subject to strictures of § 15.50. *John R. Ray & Sons v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see also Haas*, 818 S.W.2d at 386-88; *Daytona Group of Texas, Inc. v. Smith*, 800 S.W.2d 285, 288 (Tex. App.--Corpus Christi 1990, writ denied).

he ever worked for Plaintiff.[14] Thus, Plaintiff has no legitimate interest in protecting this information, which Mr. Osborne already had, from Osborne, or in preventing his use of it.

> **f.     Plaintiff Cannot Recover Damages or Fees and Because the Non-Compete Agreement is Overly Broad and Has Been Enforced in a Way Greater Than Necessary to Protect Plaintiff's Interests, Mr. Osborne is Entitled to His Attorney Fees**

*Texas Business & Commerce Code* § 15.51(c) provides, in relevant part:

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief.

As set out above, the Non-Compete Agreement is overly broad. So, as part of the court's ruling on this motion, the Court should rule that Plaintiff is not entitled to recover any damages or attorney fees in relation to Osborne's alleged violation of the Non-Compete Agreement.

*Texas Business & Commerce Code* § 15.51(c) goes on to state that--

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

---

[14] Affidavit of Sean Osborne, Exhibit 1.

The primary purpose of the employment agreement, to which the Non-Compete Agreement is ancillary, is Osborne's personal provision of fire protection services to Plaintiff's clients.[15]

Plaintiff knew, at the time the Non-Compete Agreement was executed, that its restrictions were overly broad. Osborne has never provided services on behalf of Plaintiff in Houston, Tyler, San Antonio, or College Station.[16] Plaintiff cannot identify or describe any work Osborne did for Plaintiff in or within 50 miles of any of these cities, or any plans for Osborne to work on its behalf in or within 50 miles of these cities.[17] As set out above, the prohibitions of the Non-Compete Agreement are overly broad on their face, in that they amount to an industry-wide prohibition, they apply to customers with which Osborne had no dealings while working for Plaintiff, to the ambiguous category of "business relations", and even to potential customers that never did business with Plaintiff. Further, the prohibitions apply regardless of Osborne's prior client relationships and knowledge. And Plaintiff has sought to enforce the Non-Compete Agreement to the full extent of its terms, beyond what is necessary to protect its legitimate interests.[18] Accordingly, Mr. Osborne should be awarded his attorneys' fees incurred to date.

Additionally, the Court should grant Osborne a summary judgment on his claim for declaratory relief. Osborne has filed a claim for declaratory relief under *Tex. Civ. Prac. & Rem. Code* Chapter 37, seeking a declaration that the Non-Compete Agreement is overly broad and thus unenforceable. For all of the reasons set out herein, the Non-Compete Agreement should be

---

[15] Executed Offer of Employment, Exhibit 2, ¶2.

[16] Affidavit of Sean Osborne, Exhibit 1; Responses to Requests for Admission, Exhibit 4, RFA 4.

[17] Responses to Interrogatories, Exhibit 5, ROGS 3 and 4; Responses to Requests for Production, Exhibit 6, Requests 7-11.

[18] Osborne asks that the Court take judicial notice of its file, including Plaintiff's pleadings, the TRO, and the temporary injunction. *See Fed. R. Evid.* 201.

declared overly broad and unenforceable. And if the Court enters such a declaration, Osborne should be awarded his reasonable attorneys' fees under chapter 37.

### g. The Non-Solicitation and Non-Competition Aspects of the Non-Compete Agreement Expire on August __, 2019, Regardless of the Temporary Injunction

The Non-Compete Agreement states that the non-solicitation and non-compete provisions are to run for "one (1) year after termination" of Mr. Osborne's employment.[19] As allowed by his at-will status[20], Mr. Osborne ended his employment on August 20, 2018.[21] Plaintiff has not pled and there is no basis for extending the non-competition or non-solicitation obligations of the Non-Compete Agreement beyond that document's plain terms. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965) ("Courts cannot make new contracts between the parties, but must enforce the contracts as written."); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (extension of injunctive relief beyond the term of a non-compete allowed only when a defendant engages in egregious conduct or there was a significant delay in litigation due to no fault on the part of the plaintiff). In fact, the parties in October 2018 proposed an agreed temporary injunction to the state court, which included an expedited discovery schedule, in an effort to have the issues related to the enforceability of the Non-Compete Agreement addressed expeditiously. (Doc. #1-2, p.75-78 of 297.) However, Plaintiff never obtained a signature by the state judge on that that temporary injunction order, a trial setting was never made, and the bond for it was never posted. *See Tex. R. Civ. P.* 683 (requiring a temporary injunction to include a trial setting); 684 (requiring applicant for injunction post a bond); *see also State Farm Ins. Co. v. Pults*, 850 S.W.2d 691, 692-93 (Tex. App.--Corpus Christi 1993, no writ)

---

[19] Non-Compete Agreement, Exhibit 3, p.2, ¶2.

[20] Exhibit 2.

[21] Exhibit 1A.

(Texas trial court's order must be in writing, signed, and filed in the record to be effective). Thus, there is no basis for extending the injunction beyond the term of the Non-Compete Agreement itself. *See Provenzale*, 334 F.3d at 464.

Thus, Osborne seeks a ruling that Plaintiff's request for injunctive relief to hold Mr. Osborne to the non-competition and non-solicitation aspects of the Non-Compete Agreement will be, as of August 20, 2019, moot, and that as of the end of August 20, 2019, those provisions expire and are of no further force or effect. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) (Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." Mr. Osborne further seeks a ruling that he is relieved of the any restrictions or obligations of the non-solicitation and non-competition clauses regardless of the temporary injunction proposed to the state court as that injunction has not been signed and is not otherwise effective.

## B. NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

### 1. *No Evidence Summary Judgment Standard*

As an alternative to a traditional motion, a summary-judgment movant can meet its burden by showing that there is an absence of evidence to support an essential element of the non-movant's case. *Rushing v. Kan. City. S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999) (movant may satisfy its initial burden by "merely pointing to the absence of evidence in the record supporting the issue"). Such a "no evidence" summary judgment motion shifts the burden to the nonmovant to show that there is a genuine issue of material fact in dispute. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A no evidence motion puts the nonmovant on notice that he must come forward with all of his evidence and specifically

demonstrate how the evidence proves there is a genuine issue of material fact as to each element of his causes of action. *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

The nonmovant is not permitted to rest on its pleadings, and "[n]either conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Rather, "[t]o survive summary judgment, the nonmoving party must submit or identify evidence[,] designate specific facts[, and] articulate the precise manner in which the evidence supports his or her claim" that there is a genuine issue of material fact. *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails … to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### 2. *Plaintiff has no Evidence of that Osborne Worked in or Within 50 Miles of Houston, Tyler, San Antonio, or College Station*

A restrictive covenant "must not restrain [a former employee's] activities into a territory into which his former work has not taken him." *Haass.*, 818 S.W.2d at 387. Plaintiff has no evidence that Osborne performed any work on its behalf in Houston, Tyler, San Antonio or College Station, or that Osborne performed work within 50 miles of any of these cities. Because Osborne has not performed work in any of these cities, the Non-Compete is overly broad to the extent it purports to prohibit Mr. Osborne from working in the fire protection industry in these cities. And as set out above, because Plaintiff is attempting to enforce a non-compete agreement

in a way that is broader than is necessary to protect its interests, Plaintiff is not entitled to recover damages or fees and Osborne is entitled to his attorneys' fees. *See Texas Business & Commerce Code* § 15.51(c).

### 2. *Plaintiff has no Evidence to Support Extension of the One-Year Term for the Non-Solicitation and Non-Competition Clauses*

As noted, the non-solicitation and non-competition provisions of the Non-Compete Agreement extend for one year after the termination of Mr. Osborne's employment, and he quit his job with Plaintiff on August 20, 2018. Plaintiff has not pled and, regardless, has no evidence to prove, any basis for injunctive relief beyond the one-year period from August 20, 2018. *See Royal Indem. Co.*, 388 S.W.2d at 181; *Provenzale*, 334 F.3d at 464 (extension of injunctive relief beyond the term of a non-compete allowed only when a defendant engages in egregious conduct or there was a significant delay in litigation due to no fault on the part of the plaintiff). To the contrary, as set out above, the parties in October 2018 proposed an agreed temporary injunction to the state court, but Plaintiff never obtained a signed order that complied with the Texas Rules. Thus, there is currently no injunction in place and certainly no basis for extending the injunction beyond the term of the Non-Compete Agreement itself. *See Provenzale*, 334 F.3d at 464.

### III.   CONCLUSION

The foregoing considered, Mr. Osborne requests that the court enter a traditional and no evidence summary judgment in his favor on Plaintiff's claim for breach of contract (including its claim for injunctive relief) and on Osborne's claim for declaratory relief, finding that the non-competition and non-solicitation provisions of the Non-Compete Agreement is so vague and indefinite as to be unenforceable or, alternatively, that the Court rule that the non-competition is overly broad and not enforceable as written.

To the extent that the court rules that the Non-Compete Agreement is overly broad, Mr. Osborne requests that the Court further rule that, as provided by § 15.51(c), Plaintiff is not entitled to recover damages or fees for breach of the Non-Compete Agreement and that Mr. Osborne be awarded his attorney fees to date.

> Respectfully submitted,
>
> NAMAN, HOWELL, SMITH & LEE, PLLC
> 400 Austin Avenue, 8th Floor (76701)
> P. O. Box 1470
> Waco, Texas 76703-1470
> 254.755.4100 / Facsimile 254.754.6331
>
> BY:   /s/ *Joe Rivera*
>     Joe Rivera
>     State Bar No. 24065981
>     jrivera@nhsl.com
>
> ATTORNEYS FOR SEAN L. OSBORNE

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served on counsel of record for Plaintiff, in accordance with the Federal Rules of Civil procedure, on the 27th day of June 2019.

> /s/ *Joe Rivera*
> Joe Rivera