IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IMPACT FIRE SERVICES, LLC | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 6:19-cv-00176-ADA-JCM |
| | § | |
| SEAN L. OSBORNE, | § | |
| | § | |
|     Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S COMBINED TRADITIONAL AND NO EVIDENCE MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Impact Fire Services, LLC ("Impact") files its *Response to Defendant's Combined Traditional and No Evidence Motions for Summary Judgment* and respectfully offers the following:

## I.    SUMMARY OF MOTION

Although substantive discovery has not been concluded, Defendant now seeks a *fourth* bite at the apple by filing his *fourth* Motion for Summary Judgment,[1] this time alleging the Non-Competition and the Non-Solicitation covenants he signed in his Employment Agreement with Plaintiff, Impact, are unenforceable because they are overbroad, vague, and unreasonable. Defendant's current motion should be denied for the following reasons:

- o The no-evidence and traditional motion for summary judgment are wholly premature given that parties have not engaged in substantive discovery and the discovery deadline is ten months away;

- o The Non-Competition and Non-Solicitation covenants are enforceable on their face as they are properly limited in time, geography and scope; and

---

[1] Defendant filed a previous Motion for Summary Judgment in this Court, which was denied. Prior to removal from state Court, Defendant also filed two Motions for Summary Judgment in state court and even filed a *Petition for Mandamus* pertaining to the denial of his motion for summary judgment.

1

- o This Court already determined that the restrictive covenants were ancillary to an otherwise enforceable agreement as Impact provided Osborne with confidential information in exchange for Osborne's agreement to not use or disclose that confidential information to the detriment of Impact. Thus, any unenforceable provision of the covenants do not require dismissal of Plaintiff's case, but rather should be "blue-penciled" or reformed to be enforceable, as required by Tex. Bus. & Com. Code § 15.51.

Ultimately, Defendant's fourth motion for summary judgment lacks merit and should be summarily denied. Indeed, the Non-Competition and Non-Solicitation covenants contained within the Agreement are properly limited in time, geographic area, and scope; and impose no greater restraint than necessary to protect the reasonable business interest of Impact. Therefore, Defendant's Motion should be denied.

## II.     PROCEDURAL BACKGROUND

Impact filed a lawsuit in state court against Defendant Sean Osborne ("Osborne" or "Defendant") on September 20, 2018. (Dkt. 1, pp. 25-58). Impact obtained a Temporary Restraining Order against Defendant on October 4, 2018. (Dkt. 1, pp. 80-81). The Parties then entered into an Agreed Temporary Injunction effective October 24, 2018. (Dkt. 1, pp. 75-79). Defendant filed two motions for summary judgment in state court, the first of which was briefed, argued, and denied.[2] On the same day Defendant filed his second motion for summary judgment, he also filed a *Counterpetition* alleging a federal cause of action. Impact subsequently removed the case to federal court.

Then, Defendant attempted to reargue his first motion for summary judgment alleging the restrictive covenants were unenforceable, although it had previously been denied in state court. On June 27, 2019, this Court properly denied Defendant's motion for summary judgment. That same day, Defendant filed another motion for summary judgment in this Court, again alleging that the

---

[2] Defendant filed a *Petition for Mandamus* pertaining to the denial of his first motion for summary judgment, but it was ultimately dismissed by the state appellate court based on Impact's removal of the case to federal court.

restrictive covenants were unenforceable, but this time for new reasons. Impact contends material factual issues exist demonstrating the restrictive covenants *are* enforceable, and further contends Defendant's motion is premature because the parties have not yet engaged in substantive discovery.

### III.     FACTUAL BACKGROUND

#### A.     Impact is a Full Service Fire Protection Company That Develops, Markets and Sells Various Products for Life Safety.

Impact Fire Services, LLC is a full-service fire protection company, providing installation, maintenance, monitoring, and retro-fitting of fire safety and prevention systems.[3]  Impact develops, markets and sells various products for life safety.  This is a niche and specialized industry where competition is high for customer base and Impact Fire's proprietary and confidential information is protected as a result. [4]  Impact Fire's competitors likewise manufacture, install, maintain/service, market, monitor and develop fire and life safety systems. [5]

Impact is part of a national company, with locations throughout the United States.[6]  Impact has several locations in Texas, including Austin, Waco, Dallas/Fort Worth, Lubbock, College Station, Houston and San Antonio.[7]  Impact's Waco, Texas location is at 214 Mid Tex Road, Lorena, McLennan County, Texas 76655.

#### B.     Osborne Joined Impact in 2017 and Agreed to a Confidentiality, Non-Solicitation, and Non-Competition Agreement

Osborne started working for Impact effective August 8, 2017, after he accepted Impact's offer of employment following the acquisition of his former employer, Central Texas Security &

---

[3] *See* **Exhibit A**, Affidavit of Benjamin Fowler at ¶3-4.
[4] *Id*.
[5] *Id*.
[6] Impact Fire Services, LLC was legally established in 2016 after being in business under another name since 2009. On August 8, 2017, Impact was acquired by Caltius Equity Partners and now maintains a national partnership with Academy Fire, while operating as a subsidiary of AI Fire.
[7] *Id*.

3

Fire Equipment, Inc. Osborne was the foreman/operations technician responsible for managing Impact's Baylor University account, running a crew of five employees, selling Impact's services and products to both current as well as prospective customers, communicating (including face-to-face) with current and prospective customers on any questions or concerns they may have, and working on the actual jobs when necessary for Impact.[8] Osborne sold products and rendered services for Impact's operations originating from its McLennan County office, but the job sites themselves were located throughout the State of Texas.[9]

### C.     The <u>Non-Competition</u> and <u>Non-Solicitation</u> Agreement

In order to continue his employment with Impact following the acquisition of his former employer, Osborne signed an *Agreement to Maintain Confidentiality of Information, Not to Solicit, and Not to Compete* (the "Agreement").[10] **See Exhibit B.** In exchange for proper consideration, Osborne agreed to the Non-Competition provision—for a period of twelve months after the termination of Osborne's employment with Impact, Osborne promised not to be employed or retained by, directly or indirectly own, or render any services for a company that competes with Impact's "Business" in the restricted area. *Id.* ¶ 2(a).

The Agreement defines "Business" as "including but not [being] limited to any business or enterprise that develops, manufacturers (sic), markets, or sells any product or service that competes with any product or service developed, manufactured, marketed or sold, or planned to be developed, manufactured, marketed or sold, by the Company or any of its subsidiaries while the Employee was employed by the Company…" *Id.*[11] The restricted area for the Non-Competition

---

[8] *See* **Exhibit A**, Affidavit of Benjamin Fowler at ¶2.
[9] *Id.* at ¶5.
[10] Osborne signed the Agreement after negotiating for additional monetary compensation that he was to receive after maintaining employment with Impact for one-year (referenced in the Agreement as a "retention bonus").
[11] Impact was legally formed "to sell, design, fabricate, install, service and inspection (sic) fire sprinkler and alarm systems." *See* **Exhibit C**.

4

provision is defined as the area "within a Fifty (50) mile radius of the city limits of the Employer's Geographic Area." **Exhibit B** at ¶ 2(a).  The "Employer's Geographic Area" is further defined as "Houston, Austin, Waco, Tyler, San Antonio, College Station, and other cities throughout Texas." *Id.* at p. 1.

In the Agreement, Osborne also agreed to a Non-Solicitation provision— not to solicit, hire or engage as an independent contractor any individual employed by Impact during his employment for one year after his termination; and not to solicit business from or perform services for any customer, supplier, licensee or business relation of Impact with whom he had **material contact** for one year after his termination. *Id*. ¶ 2(b) (emphasis added).

### D. Osborne Worked For Impact All Over Texas

Although Osborne serviced many Impact customers within 50 miles of Waco, Texas, he also provided services outside of the Waco area during his employment.  Those customers included, but were not limited to, a coal mine in Kosse[12], Firestone in Corsicana[13], Sanderson Farms outside of College Station[14], John King Construction, Ltd. in Round Rock, Lockhart, and Austin[15], and TACALA Companies in Houston, College Station, San Antonio and Austin.[16]

### E. Osborne Resigned from Impact on August 20, 2018 and Started His Own Competing Business Just 17 Days Later.

On August 20, 2018 Osborne resigned from his position at Impact—conveniently right after receiving his $10,000 retention bonus. On September 6, 2018—just 17 days after his resignation and 7 days after receiving the reminder about his legal obligations to Impact—Osborne legally formed his own business in McLennan County—Texas Life Safety Solutions, LLC

---

[12] **Exhibit D**, 49:24-6 and 55:12-19.
[13] *See* **Exhibit E**, Bates label 000124-126, 000134-137.
[14] **Exhibit D**, 49:16-23 and 56:6-13.
[15] *See* **Exhibit E**, Bates labels 000127-133, 000138-140.
[16] *Id.*

("TLSS"). *See* **Exhibit F,** Bates label 000060-61. Osborne stated that his new business was for "fire protection and security system installation, service, inspection, and monitoring" – the very same business as Impact. *Id.* Osborne's new competing business, TLSS, is a manager managed LLC. *Id.* Osborne is the sole manager of TLSS. *Id.* TLSS's sole physical location is located at 548 Sundown Drive, Waco, Texas 76712—Osborne's residence. *Id.* Indeed, Osborne's own words in the entity formation documents describing his new business, unequivocally show he intends to or is currently competing with Impact by having a "fire protection and security system installation, service, inspection, and monitoring" business, in direct contravention of his Agreement. Per the terms of the Agreement, both the Non-Competition and the Non-Solicitation covenants will expire within approximately four weeks from the date of this filing (i.e., August 20, 2019), one year after Osborne resigned from employment.[17]

## IV.    ARGUMENT & AUTHORITIES

**A.    Standard of Review.**

In reviewing Osborne's motion for summary judgment, the Court must take as true all evidence favorable to Impact, and indulge every reasonable inference, and resolve all doubts in Impact's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The Court also must consider all evidence presented in the light most favorable to Impact. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). Under this standard, and given the early stage in discovery as discussed below, Defendant's Motion should be summarily denied.

---

[17] Through discovery the parties are exploring whether any equitable tolling arguments will apply.

6

**B.     The Court Should Deny Plaintiff's Motion as Premature As the Parties Have Another Ten Months of Discovery and Have Not Yet Conducted Any Depositions.**

Osborne's summary judgment motions are premature because the parties have not engaged in substantive discovery, have conducted no depositions and the discovery deadline is ten months away. Osborne cannot claim that "no evidence exists" or that there are not material fact issues when discovery has just begun. Indeed, Osborne and other relevant fact witnesses have not been deposed, and the proposed joint scheduling order filed with the Court identifies May 15, 2020 to be the end of discovery period, almost ten months from now.

Summary judgment motions filed at the beginning of discovery are routinely denied as premature. *Kelley v. Gustafson*, No. 5:13-CV-27, 2014 WL 316587, at *1 (E.D. Tex. Jan. 28, 2014) (denying as premature plaintiff's motion for partial summary judgment because the court had not entered a scheduling or discovery order, nor had the parties engaged in substantive discovery); *Sweeny v. Tex. State Unvi.*, No. A-14-CV-910 LY, 2015 WL 2345086, at *4 (W.D. Tex. May 14, 2015) (holding a motion for summary judgment is "plainly premature" when the court has not yet entered a discovery plan or scheduling order); *Hayes v. Woods*, 05-00-01121-CV, 2001 WL 727347, *2 (Tex. App.—Dallas June 29, 2001, no pet.) (("A no-evidence motion for summary judgment is not proper unless adequate time for discovery has passed.")

Indeed, the Court must decide to either enforce the restrictive covenants as written, or blue-pencil the restraints to tailor it to those measures reasonably necessary to protect Impact Fire's business and goodwill, which can only be done *after* it has heard and considered the relevant evidence from both parties. *See e.g.*, *Ennis v. Interstate Distributors, Inc.*, 598 S.W.2d 903, 906 (Tex. Civ. App.—Dallas 1980, no writ); *Custom Drapery Co., Inc. v. Hardwick*, 531 S.W.2d 160, 164 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ). The parties are only at the initial stages of gathering such evidence and, per the Court's Order, have another ten months to complete

7

discovery. Simply put, Osborne cannot "jump the gun" and provide a self-serving affidavit to state there are no factual issues when Impact has not even deposed him yet (or anyone else) and neither party has engaged in substantive discovery. Nor can the Court do the careful weighing of the restrictive covenants as written against various interests given this early stage of discovery. Thus, Osborne's Motion is premature and it should be denied on this basis alone. *Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 410062, at *1 (N.D. Tex. Jan. 30, 2015) ("Motions for summary judgment shall be deemed premature until the conclusion of discovery).

C. **Osborne's <u>Non-Competition</u> and <u>Non-Solicitation</u> Covenants are Enforceable On Their Face.**

Moreover, Osborne's Motion for Summary Judgment should be denied because the agreements he signed – the Non-Competition and Non-Solicitation covenants – are enforceable, as a matter of law. Importantly, throughout his Motion, Osborne conflates the two restrictive covenants that are at issue here—the Non-Competition and the Non-Solicitation—but it is important to analyze them separately. Although the enforceability of a covenant is ordinarily a question of law for the court, the court's ultimate determination must rest on the facts and circumstances of each case. *Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 788 (Tex. 2011).

In Texas, covenants not to compete are enforceable as long as certain requirements are met. The two issues the court must examine in determining whether a covenant is enforceable are: (1) whether the covenant is ancillary to an otherwise enforceable agreement; and (2) whether the covenant is reasonable and imposes no greater restraint than necessary to protect the reasonable business interests of the employer. *Id.* at 777; s*ee also Alex Sheshunoff Mgmt. Services, L.P. v. Johnson,* 209 S.W.3d 644, 659 (Tex. 2006); *Gorman v. CCS Midstream Servs., L.L.C.*, 12-09-00204-CV, 2011 WL 1642624, *3 (Tex. App.—Tyler Apr. 29, 2011, no pet.); *Leck v. Employer's Casualty*, 635 S.W.2d 450, 453-54 (Tex. App.—Fort Worth 1982, no writ). This Court previously

held in its June 27 Order that Plaintiff presented sufficient facts to demonstrate its burden that the first requirement is met and that the Non-Competition and Non-Solicitation covenants are ancillary to an otherwise enforceable agreement, and proper consideration was present in order for the contract to be enforceable.[18] Dkt. 10. Thus, Impact will only focus now on the second prong, where a court evaluates the reasonableness of the covenant and, if necessary, the required reformation thereof, after discovery and consideration of relevant evidence at the final hearing of the case. *Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 937-38 (Tex. App.—Eastland 2009, no pet.); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238-39 (Tex. App.—Houston [1st Dist.] 2003, no pet); Tex. Bus. & Com. Code § 15.51.

In his Motion, Osborne does not dispute that the covenants are reasonable as to time (one-year), but he now argues that the Non-Competition's geographic area and the scope of the activity to be restrained are not reasonable and that the Non-Solicitation is unenforceable. Impact disputes these assertions and would show the Court as follows:

1. **Material Factual Issues Exist Demonstrating the <u>Non-Competition</u> Agreement is Reasonable as to Geographic Limitation and Scope.**

    a. **Material Factual Issues Exist Demonstrating the <u>Non-Competition</u> Agreement is Reasonable in Geography Because it is Limited to Areas Where Osborne Worked for Impact.**

Impact has presented sufficient evidence to demonstrate the Non-Competition covenant is tailored to apply to the geographic areas in which Osborne conducted business on behalf of Impact. Osborne argues that there is no factual dispute that he only worked in Waco, Texas and thus, the covenant extends to an unreasonable geographic area, as it covers multiple Texas cities. However, Osborne is mistaken. Although Osborne's physical office was Impact's Waco, Texas location, the

---

[18] This Court also noted in its June 27, 2019 Order that on the record presented it could not find that breach, even if there was one by Impact Fire, was material to such an extent that it undermined the very essence or substance of the agreement.

job sites he worked, customers he serviced, and crews he managed, were located throughout the State of Texas.[19] For example, Osborne's customer accounts included, but were not limited to, a coal mine in Kosse; Firestone in Corsicana; Sanderson Farms outside of College Station; and John King Construction, Ltd. in Round Rock, Lockhart, and Austin.[20] Moreover, Osborne was also responsible for the large TACALA account (also known as Taco Bell) which required him to oversee multiple Impact locations across the State of Texas, including in Houston, College Station, San Antonio and Austin.[21] Osborne worked and/or managed technicians in these various locations throughout Texas where Impact had offices and customer accounts.[22]

Indeed, here, Impact is seeking to limit Osborne from competing at locations within a 50-mile radius from where he worked, which is reasonable as a matter of law. "Texas courts have generally held that a geographical limitation imposed on an employee which consists of the territory within which the employee worked during his employment is a reasonable geographic restriction." *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 232-33 (Tex. App.—Texarkana 1998, no writ); *Car Wash Sys. of Tex. v. Brigance*, 856 S.W.2d 853, 859 (Tex. App.—Fort Worth 1993, no writ) (upholding a one-year covenant against competition by service manager of car wash builder/supplier/repair service in Texas and in any other state in which employer is doing business). Because the Agreement is written so that Osborne cannot compete within fifty miles of the cities he worked in during his employment — which includes Houston, Austin, Waco, Tyler, San Antonio, College Station, and other cities he worked in throughout Texas — it is reasonable and summary judgment should be denied. *See Id.; see also* Ex. B.

---

[19] *See* **Exhibit A**, Affidavit of Benjamin Fowler at ¶5-6.
[20] *Id*.
[21] *Id*.
[22] *Id*.

Notably, taking the facts most favorable to Plaintiff (as required), a covenant that extended outside of where Osborne directly worked would still be reasonable given his duties and involvement with customers at the company. Although "as a general rule, a reasonable geographic restriction for covenants not to compete is the territory in which the employee actually worked while in the contractual employment . . . . [h]owever, the breadth of enforceable geographical restrictions in covenants not to compete must depend on the nature and extent of the employer's business and the degree of the employee's involvement in that business." *AmeriPath, Inc. v. Hebert,* 447 S.W.3d 319, 334-35 (Tex. App.—Dallas 2014, pet. filed); *see, e.g., M-I LLC v. Stelly,* 733 F. Supp. 2d 759, 797-98 (S.D. Tex. 2010) (considering employee's extensive job responsibilities, his position in upper management, and level of involvement in the company's growth and development to determine reasonableness of agreement).

The *AmeriPath* and *Stelly* cases are instructive. In *AmeriPath, Inc.*, the employee's covenant not to compete even covered areas in which the employee did not work. The employee argued that Texas law limited non-competes to geographical areas where the employee worked, and thus, the geographic scope in his agreement was unreasonable because it was not so limited. *AmeriPath, Inc.,* 447 S.W.3d at 334-35. The former employer correctly argued that, given the employee's position not only as an employee, but also a higher-level employee the former employer, **the restriction was reasonable because it was "related to the region where [the employee] was responsible for work and was necessary to protect appellants' business interests."** *Id.* (internal citations and quotations omitted) (emphasis added). The court recognized that the former employer's "interest in limiting [the employee's] competition grew out of not only his employment as [an employee], but also his service as a member of [the former employer's] highest level management team." *Id.* Accordingly, the court concluded that the

11

employee failed to establish that his non-compete was unreasonably broad in geographic scope. *Id.*

Similarly, in *Stelly*, the employee's covenant not to compete prevented him from competing "in any geographic area" where the former employer "does business or is authorized to do business." *Stelly,* 733 F. Supp. 2d at 797. The covenant did not define the actual or authorized business areas; however, the former employer submitted evidence that it did business in North America, South America, and the Caribbean. *Id.* The employee testified that, as Manager of Sales for the Americas, he worked throughout this territory. *Id.* Although the court acknowledged that a geographic area covering the Western hemisphere is broad, it found that **"the geographic restriction contained in the covenant was reasonable to protect [the employer's] business interests" given "[the employee's] extensive job responsibilities, his position in upper management [with the former employer], and the fact that his actual territory did span the Americas."** *Id.* (emphasis added).

Here, Osborne was a highly-skilled foreman for Impact, ran a crew, and was provided confidential and proprietary information. This confidential information, including pricing, involved the entire Texas business, not simply the Waco-based operations. Impact's 50-mile limitation prevents an outgoing employee from immediately using the knowledge they gained to benefit competitors, in this case Osborne's own company, in other areas of the state. In fact, the 50-mile restriction is under-inclusive, as it does not include the entire State of Texas. Indeed, courts have enforced geographic limitations covering substantially larger areas. *Propath Servs., L.L.P. v. Quest Diagnostics Clinical Labs., Inc.,* No. CIV. 3:00-CV-2391-H, 2002 WL 535056, at *10 (N.D. Tex. Apr. 9, 2002) (geographic restriction to 48 Texas counties "is not unreasonable [if] the 48 Texas counties were the geographic region for Defendants' marketing of [] services."); *See*

*Stelly,* 733 F. Supp. 2d at 797 (most of the Western hemisphere).  Because Impact contends that Osborne's Non-Competition Agreement only covers areas where he worked and that are necessary to protect Impact's business interests, the geographic restriction contained in the Agreement cannot be dismissed as unreasonable on summary judgment.  The covenant is reasonable and enforceable under Texas law.  *See AmeriPath, Inc.,* 447 S.W.3d at 334-35.

### b. Material Factual Issues Exist Demonstrating the <u>Non-Competition</u> Agreement is Reasonable in Scope.

Additionally, the Non-Competition covenant is narrowly tailored to Impact's business interests and is not overly broad in scope. As set forth above, under Texas law, a covenant not to compete is enforceable if the agreement has reasonable limitations as to scope of activity to be restrained, and if it does not impose a greater restraint than necessary to protect a business' goodwill or other legitimate interests. TEX. BUS. & COM. CODE § 15.50(a); *Johnson*, 209 S.W.3d at 655. As part of his non-compete, Osborne agreed not to directly or indirectly engage in the limited business of fire safety service and prevention. Osborne was free to work in any other trade, anywhere, and with anyone the day he left Impact. He was also immediately able to work in the field of fire safety services outside of the geographic scope of the agreement.

Impact Fire Services, LLC is a full-service fire protection company, providing installation, maintenance, monitoring, and retro-fitting of fire safety and prevention systems.[23] Impact Fire's competitors likewise manufacture, install, maintain/service, market, monitor and develop fire and life safety systems.[24] This is a niche and specialized industry where competition is high for customer base and Impact Fire's proprietary and confidential information is protected as a result.[25] Courts have held that when an employer operates in a unique industry, such as fire safety systems,

---

[23] *See* **Exhibit A**, Affidavit of Benjamin Fowler at ¶3.
[24] *Id*.
[25] *Id*.

13

it may have a limited number of competitors and qualified employees. *Poole v. U.S. Money Reserve, Inc.,* No.09-08-137CV, 2008 WL 4735602, at *13 n.4 (Tex. App.—Beaumont, Oct. 30, 2008, no pet.) (explaining that enforcing covenants with very broad restrictions is proper for individuals with "unique and specialized knowledge of the business and the business interests at issue"); *see also Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 827 (E.D. Va. 2011). Consequently, these types of employers must be hyper-vigilant in maintaining their customer base to ensure their survival. *See Stelly*, 733 F. Supp. 2d at 797 (finding a non-compete that restricted a former employee from engaging in business over the entire Western Hemisphere to be reasonable and not overly broad because his former employer operated in a unique market).

Impact not only has legitimate concerns with competitors acquiring its proprietary information, it also has a legitimate interest in preventing those competitors from picking away at its customer base. *See Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 38687 (Tex. 1991). To mitigate this risk, Impact Fire reasonably restrains high-level former employees from working for competing businesses for one year after their termination as permitted by Texas law, "The purpose of a covenant not to compete is to prevent employees who learn a particular business and know that business's clients from engaging in a competing business." *Property Tex Assocs. v. Staffeldt*, 800 S.W.2d 349, 351 (Tex. App.—El Paso 1990, writ denied). Impact does this to keep its competitors from undercutting its pricing model and stealing it customers. This restraint was clearly necessary as Osborne demonstrated his scienter by downloading and taking confidential information from his Impact Fire laptop, and then shortly thereafter forming his own LLC attempting to engage in direct competition with Impact Fire, just after receiving his one-year $10,000 retention bonus from the Company. Impact's legitimate interests in employee restraint

significantly outweigh any potential hardship and the Non-Competition covenant should be enforced as written. *See Johnson*, 209 S.W.3d at 655.

However, if the Court were to find that any of the above limitations were unreasonable or overly broad, summary judgment should still be denied because Osborne would still be liable for violating his non-compete covenants. Section 15.51 of the Texas Business and Commerce Code explicitly mandates that a court—upon finding that a restriction as to time, geography, and scope is unenforceable—reform the offending provision to make it reasonable. Tex. Bus. & Com. Code § 15.51(c); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 661 (Tex. App.—Dallas 1992, no writ). Stated another way, an unreasonable restriction does not void a non-compete in its entirety, but rather only to the extent the restrictions are unreasonable. Impact contends that the Non-Competition covenant is reasonable and should be fully enforced. But in the event that this Court finds any limitation unreasonable or vague,[26] Impact requests – and the law requires – the Court reform the limitations and enforce the covenant as reformed. Summary judgment should be denied.

2. **Material Factual Issues Exist Demonstrating the <u>Non-Solicitation</u> Agreement is Enforceable.**

Likewise, Osborne's Non-Solicitation covenant, which limits him from contacting customers that he had material contact with for one year after his termination is enforceable.[27] Agreements like this have been routinely upheld by Texas courts. *Gallagher Healthcare Ins. Srvs. v. Vogelsang*, 312 S.W.3d 640, 653-54 (Tex. App.—Houston [1st Dist.] Aug. 21 2009, pet. denied) (prohibiting the plaintiff from soliciting, marketing or otherwise doing business with <u>any and all</u>

---

[26] In his Motion, Osborne contends the Non-Competition covenant is vague or indefinite because it includes "various other Texas cities," which Osborne worked while at Impact. As stated above, Osborne provided services to Impact customers in cities throughout Texas, including: Houston, Austin, Waco, Tyler, San Antonio, College Station, and others, *See* **Exhibit A**, Affidavit of Benjamin Fowler at ¶4-6. Osborne is simply not allowed to compete with Impact in Texas within 50 miles of the cities where he worked. There is nothing unclear or indefinite about this.

[27] The Non-Solicitation provision is further limited to customers with whom Osborne had material contact with in the last two years of his employment.

15

<u>clients with whom he had contact while employed by the defendant</u>) (emphasis added); *Cameron Int'l Corp. v. Abbiss*, No. H-16-2117, 2016 WL 6216667, at *4 (S.D. Tex. Oct. 25, 2016) ("Global restrictive covenants are often permitted when the restriction only prohibits solicitation of customers with whom the employee dealt on behalf of the employee…").[28] Although Osborne contends that he is prohibited from contacting customers that he never dealt with, this is not true. The Non-Solicitation covenant is limited to customers not only that he had contact with, but only those he had **<u>material contact</u>** with. (emphasis added). This very narrow one-year non-solicit is clearly reasonable given Osborne's important position in the Company and customer-facing role, and numerous Texas courts have enforced covenants with similar or greater restrictions. *See Mann*, 289 S.W.3d at 846 (covenant restricted the employee's ability to provide services **<u>to any client</u>** of employer for a period of one year after his termination); *Sheshunoff*, 209 S.W. 3d at 644 (covenant prohibited employee from providing consulting services to employer's clients for one year and from selling competing product for two years); *Safeguard Bus. Sys. v. Schaffer*, 822 S.W.2d 640, 644-45 (Tex. App.—Dallas 1991, no writ) (two-year retraining on selling and attempting to sell competitive product to "any and all" customers of the firm who were serviced by the party against whom the injunction was issued); *see also, American Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 692-93 (N.D. Tex. 1996) (the court found reasonable a covenant restricting employee from selling financial services to "those persons who have bought Plaintiff's products, people to

---

[28] Osborne argues that the non-solicit is overbroad because he should be allowed to contact customers with whom he had preexisting relationships. The issue is a red herring. As ruled upon in Osborne's previous motion for summary judgment, Osborne was given trade secrets and confidential information which Impact is now protecting from disclosure to customers Osborne had material contact with during his employment. Courts have held that non-solicit agreements preventing contact with an employer's customers are enforceable to protect the interest of potentially lost goodwill and lost confidential and proprietary information. *Sirius Computer Solutions, Inc. v. Sparks,* 138 F.Supp. 3d 821, 841-42 (W.D. Tex. 2015); *Hodgson v. U.S. Money Reserve, Inc.*, No. 09-13-00074-CV, 2013 2013 WL 2732736, at *4 (Tex. App. – Beaumont 9th Dist.  2013) (upholding covenant that prevented former employees from contacting, communicating, selling, or purchasing items from former customers or persons to whom they marketed while working at the company). Further, Osborne provides no binding legal citation that such a restraint is unreasonable.

whom a sales presentation has been given, or members of their household"); *Johnson*, 209 S.W.3d at 656-57 (restricting the solicitation of any client or prospective client of the company for one year when employee's duties included client development).[29]  Thus, the Non-Solicitation covenant is properly limited and should be enforced as written.[30]

### 3. Defendant is Not Entitled to Attorneys' Fees

Because Osborne cannot show the agreement is unenforceable as a matter of law, he is not entitled to attorneys' fees. Tex. Bus. & Com. Code § 15.50(c). In order to recover attorneys' fees, a former employee must show that the employer *knew* that the restrictions were overly broad and unreasonable at the time it proffered and executed the terms of the agreement. *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 677 (S.D. Tex. 2010).  Osborne cannot and does not show that Impact *knew* that the restrictive covenants in the Agreement were overbroad as to time, geography, or scope because the covenants are not overbroad or unreasonable.  Further, Osborne has presented no evidence to show that Impact knew of the alleged unenforceable nature of the covenants but proceeded to execute the Agreement anyway. As such, Osborne is not entitled to attorneys' fees.[31]

---

[29] In his Motion, Osborne conflates the two covenants at issue and argues that the Non-Solicitation is overly broad because it precludes him from working for a competing business, regardless of whether he solicits Impact's customers. But the Non-Solicitation is limited to customers that Osborne had material contact with, and has nothing to with where Osborne is employed. *See* Exhibit B.  This Court has already ruled that the covenants are adequately supported by the consideration of sharing trade secrets and confidential information, and as argued above, the Non-Competition covenant is reasonable as to geography and scope.  Osborne's attempt to confuse the issue should be disregarded.

[30] Osborne cannot solicit business from customers, supplies, licensees, or "business relations" of Impact that he had material contact with. Osborne states that "business relations" is unclear. It is not. It is limited by the fact that he must have had material engagement with them. "Business relations" is simply not an indefinite or unclear term, especially when qualified by the "material contact" requirement. In any case, as argued above, any needed clarification does not justify summary judgment, but only requires the Court to blue-pencil to provide any necessary clarifications.

[31] Osborne's request for declaratory relief and attorneys' fees for the same should be denied based on the case and arguments cited in this Response.

## V. CONCLUSION

Osborne has failed to show the absence of a genuine issue of material fact, thus he is not entitled to summary judgment nor any declaratory judgment he seeks. Therefore, Plaintiff Impact Fire Services, LLC requests that the Court deny Defendant's Combined Traditional and No Evidence Motions for Summary Judgment in their entirety and that Plaintiff be granted all relief to which it is entitled.

OGLETREE, DEAKINS,
NASH, SMOAK & STEWART, P.C.

*/s/ Shafeeqa W. Giarratani*
Shafeeqa W. Giarratani
State Bar No. 24051493
Shafeeqa.giarratani@ogletreedeakins.com
Tara M. Kumpf
State Bar No. 24092652
Tara.Kumpf@ogletree.com
301 Congress Avenue, Suite 1150
Austin, Texas 78701
512-344-4700 (Telephone)
512-344-4701 (Facsimile)

Carolyn Russell
State Bar No. 24003913
Carolyn.russell@ogletreedeakins.com
OGLETREE, DEAKINS,
NASH, SMOAK & STEWART, P.C.
One Allen Center
500 Dallas, Suite 3000
Houston, Texas 77002-4709
(713) 655-5771 (Telephone)
(713) 655-0020 (Facsimile)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 18th day of July 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joe Rivera
jrivera@nhsl.com
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Avenue, 8th Floor (76701)
P. O. Box 1470
Waco, Texas 76703-1470
ATTORNEY FOR DEFENDANT

            */s/ Shafeeqa W. Giarratani*
            Shafeeqa W. Giarratani